**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
CASE NO.

ABS-CBN CORPORATION, a
Philippines corporation,
ABS-CBN FILM PRODUCTIONS, INC.
d/b/a Star Cinema, a Philippines corporation,
and ABS-CBN INTERNATIONAL
COROPORATION, a California corporation,

      Plaintiffs

vs.

ALADIN CABRERA d/b/a
LIVESTREAMING-ONLINE.COM a/k/a
BEFROGIFY.WEEBLY.COM
and DOES 1-10,

      Defendants.

_____/

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

Plaintiffs, ABS-CBN CORPORATION, ABS-CBN FILM PRODUCTIONS, INC. d/b/a

Star Cinema, and ABS-CBN INTERNATIONAL CORPORATION (hereinafter collectively,

"Plaintiffs" or "ABS-CBN"), by and through their counsel, hereby sue Defendants, Aladin

Cabrera d/b/a LIVESTREAMING-ONLINE.COM a/k/a BEFROGIFY.WEEBLY.COM

("Defendant Aladin Cabrera") and Does 1-10 (collectively "Defendants"), and allege as follows:

**NATURE OF THE CASE**

1.      This is an action for willful trademark and copyright infringement.  ABS-CBN is

the largest media and entertainment company in the Philippines.  With its twelve large

production studios, ABS-CBN produces over 2,430 hours of original content every year for its

numerous television stations, including daily drama teleseries, drama anthologies, movies,

musical and variety shows, game shows, reality shows- including Pinoy Big Brother, news programs, current affairs programs, documentaries, music video 24/7 (Myx), AM talk radio with DJ live on-screen (DZMM), FM radio shows with DJ live on-screen (MOR), and public affairs programs.  Every day, ABS-CBN's programming is broadcast worldwide through its agreements with dozens of cable companies' premium channels, telecom provider partnerships, Internet subscription services, and through its own 24-hour cable and satellite service, which offers pay-per-view programming.

2.      Like many creators of movies and TV content, ABS-CBN is confronted with the online infringement of the intellectual property in its programs and brands by pirate websites operating under a variety of domain names, including livestreaming-online.com and befrogify.weebly.com (the "Subject Domain Names").  Through their various websites, Defendants advertise and hold out to the public that they have ABS-CBN's copyrighted content and perform such content over the Internet, in order to illegally profit from ABS-CBN's intellectual property without ABS-CBN's consent.

3.      On information and belief, Defendant Aladin Cabrera, including specifically through his websites operating under the domain names livestreaming-online.com and befrogify.weebly.com, provides live-streaming performances of ABS-CBN's Pinoy Big Brother live stream feed (the "Pinoy Big Brother Live Stream" or "Copyrighted Work"), beginning between 9:30 p.m. and 10:00 p.m EST.  Defendant Aladin Cabrera facilitates access to this infringing content which is then live streamed through his websites simultaneous with the live stream on ABS-CBN's own legitimate content distribution services, rather than users of the websites providing the content.  Further, on information and belief, Defendant Aladin Cabrera controls the organization and presentation of the infringing content by himself and identifies the

content as ABS-CBN's through the use of ABS-CBN's trademarks, distributes and performs

such content under ABS-CBN's trademarks, and streams such content for users' viewing through

his websites.

4.      On information and belief, Defendant Aladin Cabrera profits from his

infringement at an enormous cost to ABS-CBN.  Defendant Aladin Cabrera is responsible for the

infringement of ABS-CBN's copyrighted Pinoy Big Brother Live Stream, causing substantial

harm to ABS-CBN, which has made significant investments of money, time and creative

energies to produce the content and to develop the technical platform, branding, promotions,

sales, and goodwill around its content and distribution services.  Moreover, because ABS-CBN

operates worldwide, including through partnership agreements with premium cable channels,

through its own Internet pay subscription service, and through its own 24-hour pay-per-view

programming, free streaming of ABS-CBN's content by Defendant Aladin Cabrera deprives

ABS-CBN of substantial revenue that would otherwise be derived from consumers; deprives

ABS-CBN's legitimate digital and broadcast advertisers and sponsors from having their ads and

commercials viewed by these consumers; diverts customers worldwide from its subscription

services and confuses consumers as to the source and legitimacy of its content and distribution

channels; harms ABS-CBN's ability to continue to build out its paying customer base,

particularly in international markets and the United States; and interferes with and harms ABS-

CBN's distribution and sponsorship agreements, hurting its and its partners' profits and

reputations.

5.      Defendant Aladin Cabrera's websites are classic examples of pirate operations,

having no regard whatsoever for the rights of ABS-CBN and willfully infringing ABS-CBN's

intellectual property.  As a result, ABS-CBN requires this Court's intervention if any meaningful

stop is to be put to Defendant Aladin Cabrera's piracy.

## JURISDICTION AND VENUE

6.     This is an action seeking damages and injunctive relief for trademark

counterfeiting and infringement, false designation of origin under the Lanham Act, common law

unfair competition; common law trademark infringement pursuant to 15 U.S.C. §§ 1114, 1116,

1121, 1125(a), and 1125(d), and The All Writs Act, 28 U.S.C. § 1651(a); 15 U.S.C. § 1051 *et

seq*.; and copyright infringement under the Copyright Act, 17 U.S.C. § 101 *et seq*. The

unregistered copyrighted work at issue herein is a foreign work produced in the Republic of the

Philippines ["the Philippines"], a Berne Convention signatory.

7.     This Court has subject matter jurisdiction pursuant to 17 U.S.C. §§ 101 *et seq*.,

15 U.S.C. §§ 1114 and 1125(a), 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338.

8.     This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over the state

law claims, because the claims are so related to the trademark and copyright claims in this action,

over which this Court has original jurisdiction, that they form part of the same case or

controversy under Article III of the United States Constitution.

9.     Defendant Aladin Cabrera is subject to personal jurisdiction in this District

because he targets business activities towards consumers in the State of Florida through his

advertisement, promotion, distribution, and performance of the pirated ABS-CBN copyrighted

content via his unauthorized Internet-based content distribution services, including through the

use of ABS-CBN's trademarks. Defendant Aladin Cabrera's websites operating under the

Subject Domain Names are fully accessible in this District and Defendant Aladin Cabrera

infringes ABS-CBN's intellectual property rights in this District. Finally, Defendant Aladin

Cabrera causes harm to ABS-CBN's business within this District by diverting customers in this District and within the State of Florida to his unauthorized Internet-based content distribution services through, at least, the websites operating under the Subject Domain Names. Defendant Aladin Cabrera, through his illegal distribution service, is directly and unfairly competing with ABS-CBN's economic interests in the State of Florida and causing ABS-CBN harm within this jurisdiction. ABS-CBN regularly enforces its intellectual property rights and authorized this action to be brought in its name.

10.     Venue is proper in this Court pursuant 28 U.S.C. § 1391(b) because Defendant Aladin Cabrera is, on information and belief, a non-resident alien, and thus may be sued in "any judicial district in which any defendant is subject to the Court's personal jurisdiction with respect to such an action,' as set forth above. Venue is also proper in this district pursuant to 28 U.S.C. § 1391(c) because a "defendant not resident in the United States may be sued in any judicial district." Finally, Venue is proper in this Court pursuant to 28 U.S.C. § 1400(a), which states that "civil actions, suits, or proceedings arising under any Act of Congress relating to copyrights… may be instituted in the district in which the defendant or his agent resides or may be found." Defendant Aladin Cabrera may be found in this district, as he is subject to personal jurisdiction herein.

## **THE PLAINTIFFS**

11.     ABS-CBN Corporation is a public Philippines corporation.

12.     ABS-CBN Film Productions, Inc. is a wholly-owned subsidiary of ABS-CBN Corporation.

13.     ABS-CBN International Corporation is a wholly-owned subsidiary of ABS-CBN Corporation.

14.     Plaintiff, ABS-CBN International Corporation, is, and at all times relevant hereto has been, the registered owner of the following trademark, which is valid and registered on the Principal Register of the United States Patent and Trademark Office (the "ABS-CBN Registered Mark"):

| Trademark | Registration Number | Registration Date | Class/Services |
|---|---|---|---|
| ABS-CBN | 2,334,131 | March 28, 2000 | IC 038 – television broadcasting services via satellite and cable. |

The ABS-CBN Mark is used in conjunction with high quality services in the categories identified above. A true and correct copy of the Certificate of Registration for the ABS-CBN Mark is attached hereto as Exhibit "1."

15.     The ABS-CBN Registered Mark has been used in interstate commerce for many years to identify and distinguish ABS-CBN's high quality services, including, but not limited to, broadcast distribution services, for an extended period of time and serves as a symbol of ABS-CBN's quality, reputation, and goodwill.

16.     The ABS-CBN Registered Mark has never been assigned or licensed to the Defendants in this matter.

17.     The ABS-CBN Registered Mark is a symbol of ABS-CBN's quality, reputation, and goodwill and has never been abandoned.

18.     ABS-CBN International Corporation is also, and at all times relevant hereto has been, the owner of all rights in and to the following common law trademark (the "ABS-CBN Common Law Trademark"):

| Trademark |
| --- |
|  |

19.     The ABS-CBN Common Law Trademark is used in conjunction with high quality products and services, including broadcasting distribution services.

20.     The ABS-CBN Common Law Trademark has never been assigned or licensed to the Defendants in this matter.

21.     The ABS-CBN Common Law Trademark is a symbol of ABS-CBN's quality, reputation, and goodwill and has never been abandoned.

22.     Together, the ABS-CBN Registered Mark and the ABS-CBN Common Law trademark are referred to herein as the "ABS-CBN Marks." ABS-CBN Corporation and ABS-CBN Film Productions, Inc. share exclusive rights to the ABS-CBN Marks with ABS-CBN International Corporation. Moreover, ABS-CBN Corporation and ABS-CBN Film Productions, Inc. are licensed to use and enforce the ABS-CBN Marks. Examples of Defendant Aladin Cabrera's infringement of these Marks are identified in Exhibit "2" attached hereto.

23.     ABS-CBN Corporation is the owner of the copyrights in and to the Pinoy Big Brother Live Stream identified in Exhibit "3" [the "Copyrighted Work"]. ABS-CBN Corporation, ABS-CBN International Corporation, and ABS-CBN Film Productions, Inc. all share exclusive rights in and to the Copyrighted Work. ABS-CBN Corporation, ABS-CBN International Corporation, and ABS-CBN Film Productions, Inc. are all licensed to distribute, perform, and enforce their rights to the Copyrighted Work.

24.     ABS-CBN is the largest media and entertainment company in the Philippines. All of ABS-CBN's copyrighted works are initially produced in the Philippines and then aired through its broadcast facilities or regional theaters in the Philippines.  Simultaneous with, or after that original broadcast, ABS-CBN's Filipino-centric content is then distributed throughout the world via customer-paid subscriptions, including through numerous cable companies' premium channels and telecom provider partnerships, such as with DirecTV, Time Warner Cable, Cox Communications, Comcast, AT&T, Verizon Services Corp., Braintree Cable, Cablevision, CC Communications, Centurytel, Champion Broadband, Charter, Duncan Cable TV, En-Touch, Frontier Communications, GCI Cable, Golden Rain Foundation, Groton Utilities, Hawaiian Telecom, ICable, KPU CommVision, MCV, MTA Communications, Norwood Light Dept., OpenBand Media, OSN, Phonoscope, Rainier Cable TV, RCN, Rogers, San Bruno Cable, Service Electric, Shaw, Starhub, Summit Broadband, SureWest, Tacoma Public Utilities, TVMax, Wave Broadband, Windjammer Cable, Zito Media, and many more.

25.     In addition, ABS-CBN's content is distributed by ABS-CBN through Internet subscription services, such as TFC.TV and IWANTV.COM.PH, as well as through their own 24-hour cable and satellite service TFC (The Filipino Channel) and TFC IPTV, which offers Pay-Per-View programming.

26.     ABS-CBN has expended substantial time, money, and other resources developing, advertising, and promoting the ABS-CBN Marks and the Copyrighted Work.

27.     As a result of ABS-CBN's efforts, members of the consuming public readily identify services and content bearing the ABS-CBN Marks and promoted under the ABS-CBN Marks as high quality broadcasting services and content.

28.     Genuine and authorized ABS-CBN services and content are widely legitimately advertised, promoted, and distributed by ABS-CBN and its authorized partners. Over the course of the past five to seven years, visibility on the Internet, particularly via Internet search engines such as Google, Yahoo!, and Bing has become increasingly important to ABS-CBN's overall marketing and consumer education efforts. Thus, ABS-CBN expends significant monetary resources on Internet marketing and consumer education, including search engine optimization ("SEO") strategies. Those strategies allow ABS-CBN and its authorized partners to fairly and legitimately educate consumers about the value associated with the ABS-CBN brand and the content promoted thereunder.

29.     ABS-CBN creates and distributes content serving the worldwide Filipino community.  This includes the populace of the Philippines, estimated at 92.3 million persons, as well as the substantial overseas community, which is estimated at between 10.5 million and 13.5 million persons.  *See* http://www.census.gov.ph/; http://en.wikipedia.org/wiki/Overseas_Filipino. Countries with significant resident Filipino populations overseas include:  United States (3,494,281 persons); Saudi Arabia (1,267,658); UAE (931,562); Canada (852,401); Malaysia (686,547); Australia (391,705); Japan (243,136); United Kingdom (218,777); Kuwait (213,638); Qatar (200,016); Hong Kong (195,128); Singapore (184,498); and Italy (172,148).  *Id*.; *see also* Commission on Filipinos Overseas, *Stock Estimate of Overseas Filipinos* (as of Dec. 2012) (http://cfo.gov.ph/images/stories/pdf/2012_Stock_Estimate_of_Filipinos_Overseas.pdf).

30.     The United States hosts the largest population of Filipinos outside the Philippines. *Id*.  Filipinos are estimated by the U.S. State Department to be the second-largest Asian-American group in the country.  *See* http://en.wikipedia.org/wiki/Overseas_Filipino; U.S. Department of State, *U.S. Relations With the Philippines, Bureau of East Asian and Pacific*

*Affairs Fact Sheet* (Jan. 31, 2014) (http://www.state.gov/r/pa/ei/bgn/2794.htm).  In addition,

Tagalog is the fifth most spoken language in the U.S.  *See*

http://en.wikipedia.org/wiki/Overseas_Filipino.  Moreover, Florida is the state with the ninth

largest Filipino American population. *See*

http://en.wikiedia.org/wiki/Demographics_of_Filipino_Americans. Florida is a critical market in

the United States for ABS-CBN's business given the size of the State's Filipino community.

## THE DEFENDANTS

31.     Defendants operate through domain names registered with registrars in multiple

countries and are comprised of individuals, partnerships and/or business entities of unknown

makeup, which, upon information and belief, reside and/or operate in foreign jurisdictions.

Defendants have the capacity to be sued pursuant to Federal Rule of Civil Procedure 17(b).

Defendant Aladin Cabrera's websites operating under the Subject Domain Names are fully

accessible in this District and throughout the United States of America.

32.     Upon information and belief, Defendants use aliases in conjunction with the

operation of their businesses.

33.     ABS-CBN is presently unaware of the true names of Does 1-10, although they are

generally identified as the managing agents and/or co-conspirators of Defendant Aladin Cabrera.

ABS-CBN will amend this Complaint upon discovery of the identities of such fictitious

Defendants.

34.     On information and belief, Defendants are directly and personally contributing to,

inducing, and engaging in trademark and copyright infringement, as alleged herein.

35.     Defendants are part of an ongoing scheme to create and maintain an illegal online

distribution network of ABS-CBN's and others' intellectual properties which (i) confuses

consumers as to the source of Defendants' infringing content and the legitimacy of their distribution service and (ii) expands the marketplace for illegal distribution services of pirated content while shrinking the legitimate marketplace for genuine distribution services of ABS-CBN's copyrighted content. The natural and intended byproduct of Defendants' actions is the erosion and destruction of the goodwill associated with the ABS-CBN name and associated trademarks, as well as the destruction of the legitimate market sector in which it operates.

36.     Defendant Aladin Cabrera is the past and present conscious force behind the operation of, at least, the Subject Domain Names.

37.     Upon information and belief, Defendant Aladin Cabrera directly engages in unfair competition with ABS-CBN by (i) advertising, offering for distribution, promoting, and performing ABS-CBN's Pinoy Big Brother Live Stream without authorization under counterfeits and infringements of one or more of ABS-CBN's trademarks to consumers within the United States and within this district through multiple fully accessible websites operating under the Subject Domain Names and additional domains and websites not yet known to ABS-CBN and (ii) creating and maintaining an illegal marketplace enterprise for the purpose of diverting business from legitimate distribution services of the Pinoy Big Brother Live Stream offered by ABS-CBN and its partners. Defendant Aladin Cabrera has purposefully directed some portion of his illegal activities towards consumers in the State of Florida through the advertisement, offers to perform and performance of ABS-CBN's Pinoy Big Brother Live Stream in the State. Defendant Aladin Cabrera's websites are accessible in the Southern District of Florida and infringements of ABS-CBN's intellectual property are viewable thereon in the Southern District of Florida.

38.     On information and belief, Defendant Aladin Cabrera has registered, established, or purchased, and maintained his Subject Domain Names, and the websites operating thereunder. On information and belief, Defendant Aladin Cabrera has anonymously registered and maintained the Subject Domain Names for the sole purpose of engaging in illegal activities.

39.     On information and belief, Defendant Aladin Cabrera will continue to register, transfer, and/or acquire new domain names for the purpose of infringing ABS-CBN's trademarks and copyrights unless preliminarily and permanently enjoined. Moreover, on information and belief, Defendant Aladin Cabrera will continue to maintain and grow his illegal distribution service network at ABS-CBN's expense unless preliminarily and permanently enjoined.

40.     Defendant Aladin Cabrera's entire Internet-based website businesses amount to nothing more than illegal operations established and operated in order to infringe the intellectual property rights of ABS-CBN and others.

41.     Defendant Aladin Cabrera's business names (*i.e.*, the Subject Domain Names and any other domain names used in connection with infringing ABS-CBN's trademarks or copyrights), are essential components of Defendant Aladin Cabrera's infringing activities.  The Subject Domain Names themselves are a significant part of the means by which Defendant Aladin Cabrera furthers his infringing scheme and causes harm to ABS-CBN in that he causes and effects the infringement as described below. Moreover, Defendant Aladin Cabrera is using ABS-CBN's famous name, trademarks, and Pinoy Big Brother Live Stream to drive Internet consumer traffic to his websites operating under the Subject Domain Names, thus increasing the value of the Subject Domain Names and decreasing the size and value of ABS-CBN's legitimate common marketplace at ABS-CBN's expense.

## FACTUAL ALLEGATIONS

### A.    *Defendant Aladin Cabrera's Domains and Associated Websites.*

42.    On information and belief, and at all times relevant hereto, Defendant Aladin Cabrera has had full knowledge of ABS-CBN's ownership of the ABS-CBN Marks and the Pinoy Big Brother Live Stream, including its exclusive rights to use, perform, distribute, and license such intellectual property and the goodwill associated therewith.

43.    Defendant Aladin Cabrera advertises ABS-CBN's Pinoy Big Brother Live Stream to the public, and uses the ABS-CBN Marks to distribute and perform such content.  *See* Exhibit 2.  Defendant Aladin Cabrera uses the ABS-CBN Marks, without authorization, to attract consumer traffic to his websites and distribute and perform the infringing performances of the Pinoy Big Brother Live Stream available thereon.

44.    ABS-CBN's representatives have viewed the infringements of the ABS-CBN Marks as well as infringements of ABS-CBN's Pinoy Big Brother Live Stream on Defendant Aladin Cabrera's websites in the Southern District of Florida.

45.    Further, Defendant Aladin Cabrera uses the ABS-CBN Marks, without authorization, to falsely suggest the infringing video content embedded on the websites for streaming is authorized, genuine content approved, endorsed, and sponsored by the ABS-CBN. *See* Exhibit 2.

46.    Defendant Aladin Cabrera's websites stream the Pinoy Big Brother Live Stream. *See* Exhibit 3.

47.    On information and belief, Defendant Aladin Cabrera's streaming of the video content also enables users to copy the Pinoy Big Brother Live Stream.

48.     On information and belief, Defendant Aladin Cabrera's websites are "closed websites," meaning that they do not allow users to make additions or changes to the websites, such that the content streamed through the websites can only be provided by the website's operators and not uploaded by viewers.  On information and belief, Defendant Aladin Cabrera also insert the links provided on the website through which users view ABS-CBN's video content in a player window on the website.  When a user clicks on the link to the ABS-CBN Pinoy Big Brother Live Stream during the time in which it is active, beginning between 9:00 p.m. EST and 10:00 p.m. EST, and continuing until the participants have gone to sleep, Defendant Aladin Cabrera's websites then stream the full-length version of the video.  *See* Exhibit 3.

49.     On information and belief, the Pinoy Big Brother Live Stream –available at the click of a button and aired simultaneously with the original broadcast – is provided in order to attract users to the infringing content.

50.      Defendant Aladin Cabrera's Internet-based website businesses are illegal operations, infringing on the intellectual property rights of ABS-CBN through his distribution and performance of ABS-CBN's Pinoy Big Brother Live Stream and using the ABS-CBN Marks to promote, advertise, and distribute such content.  On information and belief, Defendant Aladin Cabrera is using identical copies of ABS-CBN's trademarks for different quality services. ABS-CBN has extensively and continuously used the ABS-CBN Marks before Defendant Aladin Cabrera began offering counterfeit and confusingly similar imitations of ABS-CBN's distribution services. The net effect of Defendant Aladin Cabrera's actions will cause confusion of consumers at the time of initial interest and during the use of the Aladin Cabrera's illegal

14

distribution services on his websites, who will believe Defendant Aladin Cabrera's websites are legitimate, authorized distributors or are authorized and/or approved by ABS-CBN.

51.     On information and belief, Defendant Aladin Cabrera operates websites that serve only one purpose – to function as commercial online hubs for publicly providing performances of popular copyrighted content, including ABS-CBN's Pinoy Big Brother Live Stream, over the Internet to many users, without authorization or license. On information and belief, Defendant Aladin Cabrera effects this illegal scheme, in part, through the draw to consumers of ABS-CBN's Marks on his websites in order to achieve higher rankings in search engines, and by promoting his illegal distribution network through social media. *See* Exhibit 4.

52.     Defendant Aladin Cabrera is infringing ABS-CBN's trademarks through his copying, use, distribution and/or performance of ABS-CBN's Pinoy Big Brother Live Stream under the ABS-CBN Marks on the fully accessible Internet websites operating under the Subject Domain Names.

53.     Defendant Aladin Cabrera is causing concurrent and indivisible harm to ABS-CBN and the consuming public by (i) causing an overall degradation of the value of the goodwill associated with the ABS-CBN Marks, (iii) increasing ABS-CBN's overall cost to market its content and services and educate consumers about its brand via the Internet, and (iii) maintaining an illegal marketplace enterprise which perpetuates the ability of Defendants and future entrants to that marketplace to confuse consumers and harm ABS-CBN with impunity.

54.     On information and belief, Defendant Aladin Cabrera is conducting and targeting his counterfeiting and infringing activities towards consumers and causing harm, within this district and elsewhere throughout the United States. As a result, Defendant Aladin Cabrera is defrauding ABS-CBN and the consuming public for his benefit.

55.     Defendant Aladin Cabrera's use of the ABS-CBN Marks and performances of the Pinoy Big Brother Live Stream are without ABS-CBN's consent or authorization.

56.     Defendant Aladin Cabrera is engaging in the above-described illegal counterfeiting and infringement activities knowingly and intentionally or with reckless disregard or willful blindness to ABS-CBN's intellectual property rights for the purpose of trading on ABS-CBN's goodwill and reputation. If Defendant Aladin Cabrera's intentional counterfeiting and infringing activities are not preliminarily and permanently enjoined by this Court, ABS-CBN and the consuming public will continue to be harmed.

57.     Defendant Aladin Cabrera's above-identified infringing activities are likely to cause confusion, deception, and mistake in the minds of consumers and the public before, during, and after their use of the Defendant Aladin Cabrera's illegal content distribution services. Moreover, Defendant Aladin Cabrera's wrongful conduct is likely to create a false impression and deceive customers and the public into believing there is a connection or association between ABS-CBN and Defendant Aladin Cabrera, which there is not.

58.     On information and belief and based on publicly available sources, by advertising, promoting and performing the Pinoy Big Brother Live Stream, and encouraging, facilitating and assisting in the viewing and copying of the Pinoy Big Brother Live Stream, Defendant Aladin Cabrera's websites attract thousands of page views each day.

59.     On information and belief, the infringement-driven traffic increases the volume of online advertising impressions and transactions, and thereby increases online advertising revenues and enables Defendant Aladin Cabrera to charge advertisers higher rates, and reap significant profits thereby.  Moreover, the wrongfully obtained consumer traffic increases the value of the Subject Domain Names.  In these ways, the Defendant Aladin Cabrera's business

model critically depends on attracting users to view ABS-CBN's highly-valued Pinoy Big Brother Live Stream.

60.     On information and belief, Defendant Aladin Cabrera derives revenue from ad impressions, and the sale of highly valuable user analytic data, from and to the ad services that are operating on his websites.

61.     Defendant Aladin Cabrera, on information and belief, infringes, and induces, causes and/or materially contributes to the infringing activity of his users by promoting, through the text and content of the website, the presence and availability of copies of ABS-CBN's Copyrighted Work.  *See* Exhibits 2 and 3.

62.     On information and belief, Defendant Aladin Cabrera infringes, and induces, causes and/or materially contributes to the infringing activity of his users by distributing and performing, through the use of ABS-CBN's trademarks and the identification of the Copyrighted Work as ABS-CBN.  *See* Exhibit 2.

63.     Defendant Aladin Cabrera infringes, and induces, causes and/or materially contributes to the infringing activity of his users by constantly updating his inventory of content, simultaneous with the official ABS-CBN broadcast, in order to tap into the known market for pirated Filipino-centric content and constantly promote to consumers the presence and availability of copies of ABS-CBN's Pinoy Big Brother Live Stream.

64.     Because Defendant Aladin Cabrera causes the infringed content to be displayed on his websites and be streamed, he could stop the infringement at any point.

65.     However, Defendant Aladin Cabrera does not implement any means to prevent infringement because to do so would defeat the very purpose for which the Subject Domain

Names and associated websites exist – *i.e.*, to provide copyrighted content by infringing upon the trademarks of the largest media company in the Philippines.

66.     Defendant Aladin Cabrera has actual and constructive knowledge, or should have knowledge, of his and his users' infringement of ABS-CBN's Copyrighted Work and trademarks for at least the reasons that:  (i) he inserts and provides links to and performs the infringing content for users; (ii) he distributes and performs the content under ABS-CBN's Marks; (iii) as the largest media and entertainment company in the Philippines, ABS-CBN's Copyrighted Work is highly popular in Filipino communities and Defendant Aladin Cabrera profits as a direct result of broadcasting that content.

67.     ABS-CBN has no adequate remedy at law.

68.     ABS-CBN is suffering irreparable and indivisible injury and has suffered substantial damages as a result of Defendant Aladin Cabrera's unauthorized and unlawful use of the ABS-CBN Marks and Copyrighted Work. If Defendant Aladin Cabrera's counterfeiting and infringing activities and his illegal distribution network enterprise are not preliminarily and permanently enjoined by this Court, ABS-CBN and the consuming public will continue to be harmed.

69.     The harm and damage sustained by ABS-CBN has been directly and proximately caused by Defendant Aladin Cabrera's infringing activities and by the creation, maintenance, and very existence of Defendant Aladin Cabrera's illegal distribution network.

### CLAIMS FOR RELIEF

### Count One -- Trademark Counterfeiting and Infringement

70.     ABS-CBN repeats and re-alleges every allegation contained in paragraphs 1 through 69 as though fully set forth herein.

71.     This is an action for trademark counterfeiting and infringement against Defendants based on their use of counterfeits, copies and/or colorable imitations of the ABS-CBN Marks on their websites, which distribute and perform infringements of ABS-CBN's Copyrighted Work (the "pirated content").

72.     Specifically, Defendant Aladin Cabrera is distributing and performing the ABS-CBN Copyrighted Work using the ABS-CBN Marks, without authorization.  *See* Exhibit 2.

73.     Defendant Aladin Cabrera's counterfeiting and infringing use of the ABS-CBN Marks is likely to cause and actually is causing confusion, mistake, and deception among members of the general public as to the origin and quality of the pirated content as well as the legitimacy of Defendant Aladin Cabrera's illegal broadcast distribution service.

74.     Defendant Aladin Cabrera's unlawful actions have caused and are continuing to cause unquantifiable and irreparable harm and unquantifiable damages to ABS-CBN and are unjustly enriching Defendant Aladin Cabrera at ABS-CBN's expense.

75.     Defendant Aladin Cabrera's above-described illegal actions constitute counterfeiting and infringement of the ABS-CBN Marks in violation of ABS-CBN's rights under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

76.     ABS-CBN has suffered and will continue to suffer irreparable injury and monetary damages due to Defendant Aladin Cabrera's above described activities if he is not temporarily, preliminarily and permanently enjoined.

**Count Two -- False Designation of Origin Pursuant to § 43(a) of the Lanham Act**

77.     ABS-CBN repeats and re-alleges every allegation contained in paragraphs 1 through 76 as though fully set forth herein.

78.     Defendant Aladin Cabrera's illegal distribution service for the pirated content is using exact copies of the ABS-CBN Marks to perform and distribute the pirated Copyrighted Work, including within many of ABS-CBN's important business markets, such as the State of Florida.

79.     Defendant Aladin Cabrera is using the ABS-CBN Marks in connection with his illegal distribution service for the pirated content in violation of ABS-CBN's intellectual property rights and to intentionally confuse consumers into believing the pirated content and broadcast distribution services are sponsored and endorsed by ABS-CBN.  *See* Exhibits 2 and 3. Defendant Aladin Cabrera's unauthorized use of the ABS-CBN Marks is designed to falsely suggest that his activities are sponsored and/or endorsed by ABS-CBN.   On information and belief, Defendant Aladin Cabrera's unlawful use of the ABS-CBN Marks is designed to make his services appear legitimate in order to attract a larger number of viewers which results in larger advertising revenues for Defendant Aladin Cabrera.

80.     Defendant Aladin Cabrera, on information and belief, has used in connection with his illegal broadcast distribution service, false designations of origin and false descriptions and representations, including words or symbols which tend to falsely describe or represent such distribution services to the general viewing public, with full knowledge of the falsity of such designations of origin and such descriptions and representations, all to ABS-CBN's detriment.

81.     Defendant Aladin Cabrera has authorized infringing uses of the ABS-CBN Marks in connection with his illegal broadcast distribution service for pirated content.  Defendant Aladin Cabrera has misrepresented to members of the consuming public that the pirated content to which he is facilitating access to is genuine and authorized content of ABS-CBN, and that his broadcast distribution services for such content are sponsored and/or endorsed by ABS-CBN.

82.     Defendant Aladin Cabrera's above-described actions are in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

83.     ABS-CBN has no adequate remedy at law, and has sustained injury and damages caused by Defendant Aladin Cabrera's conduct.  Absent an entry of an injunction by this Court, ABS-CBN will continue to suffer irreparable injury to their goodwill and business reputation, as well as monetary damages.

<u>**Count Three -- Common Law Unfair Competition**</u>

84.     ABS-CBN repeats and re-alleges every allegation contained in paragraphs 1 through 83 as though fully set forth herein.

85.     This is an action against Defendant Aladin Cabrera based on his (i) performance and distribution of pirated ABS-CBN content using marks which are identical, both visually and phonetically, to the ABS-CBN Marks and the (ii) creation and maintenance of an illegal ongoing forum in which viewers may access public performances of and copy the pirated ABS-CBN content, operating parallel to ABS-CBN's own Internet pay subscription service through which ABS-CBN promotes its genuine content, in violation of Florida's common law of unfair competition.

86.     Specifically, and as described above, Defendant Aladin Cabrera is promoting, advertising and otherwise facilitating access to and copying of the pirated content using the ABS-CBN Marks for the purpose of creating a veneer of legitimacy for his illegal operation.  *See* Exhibits 2 and 3.  Defendant Aladin Cabrera is using counterfeits and infringements of the ABS-CBN Marks and content to unfairly compete with ABS-CBN and others for (i) space in search engine results across an array of search terms and (ii) visibility on the World Wide Web for the purpose of earning a profit at the ABS-CBN's expense.

21

87.     ABS-CBN is suffering monetary damages and irreparable injury as a result of Defendant Aladin Cabrera's wrongful actions.

### Count Four – Common Law Trademark Infringement

88.     ABS-CBN repeats and realleges every allegation contained in paragraphs 1 through 83 as if set fully forth herein.

89.     This is an action for common law trademark infringement against Defendants based on their offering for distribution, distribution, offers to perform and performance of the Copyrighted Work using ABS-CBN's Marks. ABS-CBN Corporation is the owner of all common law rights in and to the ABS-CBN Marks.

90.     Specifically, Defendants, upon information and belief, are offering for distribution, distributing, offering to perform and performing the Copyrighted Work using infringements of the ABS-CBN Marks.

91.     Defendants' infringing activities are likely to cause and are actually causing confusion, mistake, and deception among members of the trade and the general consuming public as to the origin and quality of Defendants' distribution services using the ABS-CBN Marks.

92.     ABS-CBN has no adequate remedy at law and is suffering damages and irreparable injury as a result of Defendants' actions.

### Count Five -- Direct Infringement of Copyright

93.     ABS-CBN repeats and realleges every allegation contained in paragraphs 1 through 92 as if fully set forth herein.

94.     ABS-CBN Corporation is the owner of the unregistered copyrights in and to the Copyrighted Work, the Pinoy Big Brother Live Stream, specifically identified in Exhibit 3,

produced and aired in the Philippines, a signatory to the Berne Convention. Defendant Aladin Cabrera has copied, performed and distributed this work through his websites as part of a large scale and ongoing daily illegal enterprise. This illegal enterprise, without injunctive relief, will continue through the Subject Domain Names as well as through other domains owned now or in the future by Defendant Aladin Cabrera.

95.     Defendant Aladin Cabrera is directly liable for infringing ABS-CBN's Copyrighted Work under the Copyright Act, 17 U.S.C. §§ 106(1), (3), (4) & 501.

96.     Without authorization from any Plaintiff, or right under law, Defendant Aladin Cabrera has directly infringed ABS-CBN's Copyrighted Work by his performance and distribution of this work used to cause and effect the performance and/or distribution of that work through his websites to public users worldwide.  *See* Exhibit 3.

97.     Defendant Aladin Cabrera has actual and constructive knowledge, or should have knowledge, of his infringement of ABS-CBN's Copyrighted Work for at least the reasons that: (i) he inserts and provides links to and performs the infringing content, and does so for the purpose of users' viewing of pirated content; (ii) he advertises and promotes the content on his websites; (iii) as the largest media and entertainment company in the Philippines, ABS-CBN's content is highly popular in Filipino communities and  Defendant Aladin Cabrera profits as a direct result of broadcasting that content.

98.     The foregoing acts of infringement have been willful, intentional, and purposeful, in disregard of and indifferent to ABS-CBN's rights.

99.     As a direct and proximate result of Defendant Aladin Cabrera's infringement of ABS-CBN's exclusive rights, ABS-CBN is entitled to actual damages and Defendant Aladin Cabreara's profits pursuant to 17 U.S.C. § 504(b).

100.    Defendant Aladin Cabrera's unlawful actions have caused and are continuing to cause unquantifiable and irreparable harm and unquantifiable damages to ABS-CBN and are unjustly enriching Defendant Aladin Cabrera at ABS-CBN's expense.

101.    In addition, ABS-CBN is entitled to injunctive relief, as set forth below, because of the continuing infringement of many of ABS-CBN's Copyrighted Work and because of the significant threat of future infringement as evidenced herein.

**Count Six -- Contributory Infringement of Copyright**

102.    ABS-CBN repeats and realleges every allegation contained in paragraphs 1 through 101 as if fully set forth herein.

103.    On information and belief, users of Defendant Aladin Cabrera's websites operating under the Subject Domain Names have directly infringed ABS-CBN's copyrights, including those in the Copyrighted Work identified in Exhibit 3, by performing and/or distributing the content owned by ABS-CBN, without authorization, or right under law, in violation of the Copyright Act, 17 U.S.C. §§ 106(1), (3), (4) & 501.

104.    Defendant Aladin Cabrera is contributorily liable for its users' direct infringement of ABS-CBN's Copyrighted Work in violation of the Copyright Act.

105.    Defendant Aladin Cabrera has actual and constructive knowledge, or should have knowledge, of his users' infringement of ABS-CBN's Copyrighted Work for at least the reasons that: (i) he inserts and provides links to and performs the infringing content, and does so for the purpose of users' viewing; (ii) he advertises and promotes the content on the websites; and (iii) as the largest media and entertainment company in the Philippines, ABS-CBN's content is highly popular in Filipino communities and  Defendant Aladin Cabrera profits as a direct result of broadcasting that content.

106. Defendant Aladin Cabrera induces, causes and/or materially contributes to the infringing activity of his users for all the reasons stated herein, including but not limited to because Defendant Aladin Cabrera: (i) advertises the presence and availability of "free" Filipino content; (ii) promotes the presence and availability of Filipino content and, specifically, ABS-CBN's content, through (a) the text and content on his websites and (b) through the use of ABS-CBN's trademarks (iii) displays pirated content and organizes that content for ready access; (iv) inserts the links on his websites directing users where to view the content; (v) streams the infringing content to users for viewing; (vi) frequently updates his inventory of content, simultaneous with the original broadcast, in order to tap into the known market for pirate Filipino-centric content and constantly to feed his consumers' desire for that content; (vii) enables users to copy the works; and (viii) because by promoting and providing the content, Defendant Aladin Cabrera drives more traffic to his websites to increase the profits he reaps from advertising and other revenue.

107. Defendant Aladin Cabrera has the right and ability to supervise and control his websites and the users' infringing activity as set forth above. Because Defendant Aladin Cabrera causes the infringed content to be loaded on his "closed websites" and be streamed on his websites, he could stop the infringement at any point.

108. Defendant Aladin Cabrera derives a financial benefit directly attributable to his users' infringement of ABS-CBN's copyrights. Popular, copyrighted works act as a draw that attracts users and advertising to the Subject Domain Names and associated websites, resulting in revenues from advertising impressions tied to page views and other sources.

109. Defendant Aladin Cabrera has taken affirmative steps to foster infringement by creating his websites and streaming the content, viewed through video player embedded thereon,

with the object of promoting the illegal viewing of ABS-CBN's copyrighted content and by promoting the websites and his pirated content through the websites themselves and through social media such as Twitter.  *See* Exhibit 3 and 4.

110.    Defendant Aladin Cabrera does not merely respond to user requests in a passive, content-neutral, and automated manner.  To the contrary, as set forth above, he controls the selection and provision of the content and are the cause making that content available and accessible to his public users.  Without the active and material contributions from Defendant Aladin Cabrera, the massive infringement complained of herein could not have taken place.

111.    Defendant Aladin Cabrera targets known demand for illegal access to and viewing of the Copyrighted Work in this District and throughout the world.

112.    Defendant Aladin Cabrera is the direct and proximate cause of the harm to ABS-CBN alleged herein.

113.    The foregoing acts of infringement by Defendant Aladin Cabrera have been willful, intentional, and purposeful, in disregard of and indifferent to ABS-CBN's rights.

114.    Defendant Aladin Cabrera's unlawful actions have caused and are continuing to cause unquantifiable and irreparable harm and unquantifiable damages to ABS-CBN and are unjustly enriching him at ABS-CBN's expense.

115.    As a direct and proximate result of Defendant Aladin Cabrera's infringement of ABS-CBN's exclusive rights, ABS-CBN is entitled to actual damages as well as Defendant Aladin Cabrera's profits pursuant to 17 U.S.C. § 504(b).

116.    In addition, ABS-CBN is entitled to injunctive relief, as set forth below, because of the continuing infringement of many of ABS-CBN's Copyrighted Work and because of the significant threat of future infringement as evidenced herein.

WHEREFORE, ABS-CBN demands judgment on all Counts of this Complaint and an award of equitable relief and monetary relief, against Defendants as follows:

A.      Entry of temporary, preliminary, and permanent injunctions pursuant to 15 U.S.C. § 1116, 17 U.S.C. § 502(a), and Federal Rule of Civil Procedure 65 enjoining Defendants, their agents, representatives, servants, employees, and all those acting in concert or participation therewith, from advertising, promoting, performing, copying, broadcasting, performing, and/or distributing any ABS-CBN Copyrighted Works and/or content that currently exists or which exists in the future; from infringing, counterfeiting, or diluting the ABS-CBN Marks, or any mark similar thereto, in connection with the advertisement, promotion, or distribution of pirated content, from using any logo, trade name or trademark or trade dress that may be calculated to falsely advertise the services of Defendants as being sponsored by, authorized by, endorsed by, or in any way associated with ABS-CBN; from falsely representing themselves as being connected with ABS-CBN, through sponsorship or association, or engaging in any act that is likely to falsely cause members of the public to believe any pirated content or services of Defendants are in any way endorsed by, approved by, and/or associated with ABS-CBN; from using any reproduction, counterfeit, infringement, copy or colorable imitation of the ABS-CBN Marks in connection with the publicity, promotion, advertising, or distribution of any pirated content by Defendants; from affixing, applying, annexing or using in connection with the promotion, distribution, or advertisement of any pirated content, a false description or representation, including words or other symbols tending to falsely describe or represent Defendants' pirated content as being connected with ABS-CBN, or in any way endorsed by ABS-CBN; from engaging in search engine optimization strategies using colorable imitations of the ABS-CBN name or trademarks; and from otherwise unfairly competing with ABS-CBN.

27

B.      Entry of temporary, preliminary and permanent, enjoining Defendants from creating, maintaining, operating, joining, and participating in, the World Wide Web based illegal marketplace used to copy, distribute, perform, advertise, or promote pirated content bearing counterfeits or infringements of the ABS-CBN Marks.

C.      Entry of an Order pursuant to 28 U.S.C §1651(a), The All Writs Act, that, upon ABS-CBN's request, the top level domain (TLD) Registry(ies) for the Subject Domain Name "livestreaming-online.com" or its administrators, including backend registry operators or administrators, place the "livestreaming-online.com" Subject Domain Name on Registry Hold status for the remainder of the registration period for the domain name, thus removing it from the TLD zone files which link the "livestreaming-online.com" Subject Domain Name to the IP address where the associated website is hosted.

D.      Entry of an Order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, canceling or deleting, or, at ABS-CBN's election, transferring the "livestreaming-online.com" Subject Domain Name and any other domain names used by Defendants to engage in their infringing activities at issue to ABS-CBN's control so that they may no longer be used for illegal purposes.

E.      Entry of an Order requiring Defendants to account to and pay ABS-CBN for all profits and damages resulting from Defendants' trademark counterfeiting and infringing and unfairly competitive activities and that the award to ABS-CBN be trebled, as provided for under 15 U.S.C. §1117, or, at ABS-CBN's election with respect to Count I, that ABS-CBN be awarded statutory damages from Defendants in the amount of two million dollars ($2,000,000.00) per each counterfeit trademark used and service offered, as provided by 15 U.S.C. §1117(c)(2) of the Lanham Act.

F.       Entry of an order requiring Defendants to pay ABS-CBN for all damages sustained by ABS-CBN in consequence of Defendants' copyright infringement together with appropriate interest thereon; that Defendants be required to account to ABS-CBN for, and disgorge to ABS-CBN, and to pay to ABS-CBN, all the gains, profits, savings and advantages realized by Defendants from its acts of copyright infringement described above pursuant to 17 U.S.C. § 504(b).

G.       Entry of an order requiring Defendants to pay ABS-CBN's attorneys' fees and investigative fees, and full costs and disbursements in this action.

H.       Entry of an Order requiring all funds, up to and including the total amount of judgment, in payment accounts, PayPal accounts, or advertising revenue accounts used in connection with the Subject Domain Names, and any other accounts, to be surrendered to ABS-CBN's in partial satisfaction of the monetary judgment entered herein.

I.       Entry of an order requiring Defendants to pay prejudgment interest according to law.

J.       Entry of an order for such other and further relief as the Court may deem proper and just.

DATED: August 29, 2016.                     Respectfully submitted,

                                            STEPHEN M. GAFFIGAN, P.A.

                                            By: _____ s:/*Stephen M. Gaffigan/*_____
                                            Stephen M. Gaffigan (Fla. Bar No. 025844)
                                            Virgilio Gigante (Fla. Bar No. 082635)
                                            Christine Ann Daley (Fla. Bar. No. 98482)
                                            401 East Las Olas Blvd., Suite 130-453
                                            Ft. Lauderdale, Florida 33301
                                            Telephone: (954) 767-4819
                                            Facsimile: (954) 767-4821
                                            E-mail: Stephen@smgpa.net
                                            E-mail: Leo@smgpa.net
                                            E-mail: Christine@smgpa.net

                                            Attorneys for Plaintiffs